# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID COOPER, | | No. 4:22-CV-01392 |
| Plaintiff, | | (Chief Judge Brann) |
| v. | | |
| K. ARDERY, *et al.*, | | |
| Defendants. | | |

## MEMORANDUM OPINION

### SEPTEMBER 8, 2023

Plaintiff, David Cooper, an inmate confined in the Benner Township State Correctional Institution ("SCI-Benner"), Bellefonte, Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983.[1]  The named Defendants are Correctional Health Care Administrator ("CHCA") K. Ardery, Dr. Laclure and Nurse Snyder.[2]  Cooper claims he is being denied adequate medical care for an allegedly recalled mesh used in his 2007 hernia surgery.[3]  For relief, Plaintiff seeks to be provided with "immediate revision surgery to remove the defected Marlex hernia mesh."[4]

---

[1]  Doc. 1.
[2]  *Id.*
[3]  *Id.*
[4]  *Id.*

Presently before the Court is a motion to dismiss filed on behalf of

Defendants Ardery and Snyder.[5]  For the reasons set forth below, the Court will

grant the Defendants' motion to dismiss.  Additionally, the Court will *sua sponte*

dismiss Plaintiff's claim against Defendant, Dr. Laclure for failure to state a claim.

## I.   STANDARD OF REVIEW

### A.   Rule 12(b)(6)

In rendering a decision on a motion to dismiss, a court should not inquire

"whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims."[6]  The court must accept as true the factual

allegations in the complaint and draw all reasonable inferences from them in the

light most favorable to the plaintiff.[7]  In addition to considering the facts alleged on

the face of the complaint, the court may consider "documents incorporated into the

complaint by reference, and matters of which a court may take judicial notice."[8]

However, "[t]he tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions."[9]  "Under the

pleading regime established by *Twombly* and *Iqbal*, a court reviewing the

sufficiency of a complaint must take three steps.  First, it must 'tak[e] note of the

---

[5]   Doc. 10.
[6]   *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[7]   *See Phillips v. Cty of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[8]   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).
[9]   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

elements [the] plaintiff must plead to state a claim.' *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937.  Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' *Id*. at 679, 129 S.Ct. 1937.  *See also Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."  (citation and editorial marks omitted)).  Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937."[10]  Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[11]

### B.      28 U.S.C. § 1915

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief."[12]  Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may

---

[10]   *Connelly v. Lane Const. Corp*., 809 F.3d 780, 787 (3d Cir. 2016) (footnote omitted).
[11]   *Iqbal*, 556 U.S. at 681.
[12]   *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013).

dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.[13]

Because Cooper proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[14]

## II.    COOPER'S COMPLAINT[15]

Cooper claims that in 2007, prior to his incarceration in SCI-Benner, he had surgery to repair a hernia.[16]  During "that medical procedure Plaintiff was patched with a Marlex hernia mesh."[17]  He subsequently learned that "as a result of side effects and injuries and potential further medical complications that potentially can be life-threatening, the manufacturers of 'Marlex Hernia Mesh' issued a 'recall' on this product due to the Marlex Hernia Mesh being 'defective'."[18]  Plaintiff states that "[i]n early 2022 due to chronic pain located in the left groin area where mesh is located, [he] proceeded forward with obtaining [his] medical record from that hernia repair surgery."[19]

---

[13]  *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989).

[14]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

[15]  Cooper's complaint is comprised of his complaint, entitled "Motion for Preliminary Injunction," Doc. 1, and his Memorandum of law, with attached supporting documentation.  Doc. 2.

[16]  Doc. 1.

[17]  *Id*.

[18]  *Id*.

[19]  *Id*.

On May 10, 2022, Plaintiff was transferred to SCI-Benner.[20]  On May 15, 2022, Cooper states that he filed an Inmate's Request to Staff Member, Form DC-135A with Defendant Ardery, complaining that he is "experiencing a great deal of pain in [his] abdominal area and around the location of the mesh" and "also experiencing pain in [his] gums and teeth."[21]  He requested that he "be scheduled for surgery in order to replace the defective/recalled mesh that [he] received in 2007, in that, the mesh company recommends that this would be the only way to rectify the medical issue and the painful symptom that [he is] experiencing."[22]  On May 16, 2022, Defendant Ardery instructed Plaintiff to "please sign up for sick call."[23]

On May 20, 2022, Plaintiff was seen at sick call by Nurse Tiffany Scoltile.[24] Plaintiff reported that he was "currently suffering from chronic pain in [his] abdominal and groin areas and having irregular bowel movements due to a defected mesh used during [his] hernia repair surgery that has been recalled."[25] Cooper claims that Nurse Scoltile "left the room to go speak with Dr. Laclure" and that "when she returned she had two (2) drinks of some kind, one of which she asked me to drink immediately in front of her," informing Plaintiff that "within

---

[20]   Id.
[21]   Doc. 2 at 7.
[22]   Id.
[23]   Id.
[24]   Doc. 1 at 5.
[25]   Id.

twenty-four (24) hours, [he] would have several bowel movements."[26]  The second

drink was for Plaintiff to take back to the housing unit and "take two (2)

tablespoons twice a day, to help regulate [his] bowel movements."[27]

Plaintiff then informed her that he "was going to need surgery to remove the

defected mesh, otherwise [he] would continue to suffer and potentially trigger

further medical complications that could be life-threatening."[28]  Nurse Scoltile

informed Cooper that "Dr. Laclure informed her to give [Plaintiff] the Lactulose

drink first so that [he] can regulate [his] bowel movements" and that she would

"schedule [him] for blood work, an x-ray and to have [him] sign a medical release

to obtain [his] medical records from UPMC Altoona," where Plaintiff had his

surgery.[29]

On May 21, 2022, Plaintiff had his blood work done and two days later had

x-rays taken; he also signed a medical release form to have UPMC Altoona release

his records from his 2007 hernia surgery to SCI-Benner.[30]

On May 31, 2022, Plaintiff was again seen by Nurse Scoltile.[31]  He reported

that he was "still currently suffering from chronic pain in [his] abdominal/groin

areas and still having irregular bowel movements" and that the "Lactulose drink

---

[26]   *Id.*
[27]   *Id.*
[28]   *Id.*
[29]   *Id.*
[30]   *Id.*
[31]   *Id.*

was not regulating [his] bowel movements" and that his "last bowel movement was on 5/24/2022."[32]  Nurse Scoltile directed Plaintiff to increase the Lactulose dosage.[33]  She also conducted a physical exam and prescribed Naproxen, 500mg, for pain.[34]  Nurse Scoltile also reviewed Plaintiff's medical record from UPMC Altoona and asked if Plaintiff could have a copy of the recall information sent to her to provide the medical department with complete information.[35]

On June 27, 2022, Plaintiff received from his family all his medical records surrounding his hernia surgery, as well as a copy of the recall information.[36]  On July 1, 2022, Plaintiff was seen by Nurse St. George and Nurse Scoltile and relayed his "continued suffering related to this defected mesh used during [his] hernia surgery that has been recalled."[37]  Nurse St. George prescribed "Docusate Sod, 250mg, capsule stool softeners to help [him] with bowel movements" and to continue the Lactulose.[38]

Plaintiff states that "on 7/2/22 and 7/3/22, [he] suffered a great deal of pain in [his] left groin area where [he] was faced with a mental decision of 'I don't

---

[32]  *Id.*
[33]  *Id.*
[34]  *Id.* At 6.
[35]  *Id.*
[36]  *Id* at 7.
[37]  *Id.*
[38]  *Id.*

know what to do next'."[39]  On July 3, 2022, Plaintiff filed an Inmate's Request to

Staff Member, indicating the following:

> I submit this subsequent request to you in regards to my serious
> medical need, i.e., my defective hernia mesh.  I followed your
> directives and signed up for sick-call on three (3) different occasions.
> My last visit (7/1/2022) I expressed by continuing chronic pain as
> well as my irregular bowel movements caused by the defective mesh
> that require its immediate removal.  I have provided medical staff
> (Nurse Tiffany) with sufficient proof of why the mesh requires
> immediate removal and the manufacture's recommendations
> concerning revision surgery.  I have appended all of the relevant
> documentation given to medical staff in support of my request for
> your review.  I have diligently pursued to rectify this life-threatening
> medical condition by using the channels available to me at the
> institution.  However, I am met with resistance and excuses.  This
> matter requires immediate attention and sick-call is only a dilatory
> tactic exacerbating the dangers I face if I am not scheduled for
> revision surgery.  I request to be scheduled for revision surgery by
> 7/15/22 or I will seek a TRO, exhaust remedies, and file suit.[40]

On July 6, 2022, Plaintiff's request was responded to with the notification

that he was "scheduled for our next available on-site ultrasound clinic."[41]

On July 7, 2022, Plaintiff filed Grievance No. 988564, requesting to "be

scheduled for immediate revision surgery to satisfy this life-threatening medical

problem.[42]  After notifying Plaintiff on July 19, 2022, of the need for an extension

in order to appropriately investigate and respond to his grievance,[43] Grievance

---

[39]  *Id*.
[40]  Doc. 2 at 20.
[41]  *Id.* at 24.
[42]  Doc. 2 at 24.
[43]  *Id.* at 25.

Coordinator Nurse Snyder denied Plaintiff's grievance in an Initial Review

Response, on August 1, 2022 finding the following:

> Inmate Cooper I am in receipt of your grievance win which you state that you have continued to stress to the medical department at SCI-Benner, regarding continued suffering of chronic abdominal pain and groin pain and irregular bowel movements. You state that the medical department is fully aware that you have had hernia repair surgery in the past and also that the mesh used during the surgery was defected and recalled where the manufacturers listed in the recall complications and side effects from this specific hernia mesh must be treated quickly requiring revision surgery. You request that you be scheduled for immediate revision surgery to satisfy this life-threatening medical. You state that you have written to CHCA Ardery on 5/15/22 and 7/3/22. There is no documentation to support this statement.
>
> Upon investigation it has been documented that you have been seen by a provider on multiple occasions. The providers, in their professional opinion, they do not feel that your symptoms are life threatening and require immediate attention. They do recognize that you are having medical issues and acting accordingly. Consents have been signed and records have been received from the facility where y our surgery was performed. Testing that is required for surgical appointment has been scheduled.
>
> In light of the above findings your grievance is being denied as your course of treatment is appropriate for your symptoms.[44]

On September 6, 2022, Plaintiff filed the instant action.[45] His only request

for relief is for the Court to order the Defendants to "perform their pre-existing

duties under the U.S. Constitution" and "provide Plaintiff with immediate revision

surgery to remove the defected Marlex hernia mesh."[46]

---

[44]    *Id*. at 26.
[45]    Doc. 1.
[46]    Doc. 2.

On September 7, 2022, Plaintiff filed an Inmate's Request to Staff Member,

complaining that he was "informed [he] would be scheduled to be seen by an

outside surgeon a week ago and this matter still hasn't been resolved.[47]  A response

dated September 12, 2022, indicated that Plaintiff was "scheduled for sick call on

9/12/22 but were a refusal," and that he is "currently scheduled to see the Medical

Director to discuss [his] concerns."[48]

On September 19, 2022, Plaintiff filed Grievance No. 999429 claiming that

on September 18, 2022, "after experiencing sharp stabbing pain located in mesh

are that shot to [his] stomach and chest caused [him] to collapse where [he] was

unable to move."[49]

On October 25, 2022, Grievance No. 999429 was denied as follows:

> I am in receipt of your official grievance dated 9/27/2022 in which
> you claim you are having issues from a defected hernia mesh repair
> that requires surgery and prison official's inaction to your request for
> revision surgery are violating your 8th Amendment Constitutional
> rights.  You are asking for $500,000, surgery, to not be transferred
> until this matter is resolved and for no retaliation from staff.
>
> I have investigated your claims and have found the following:  On
> 9/19/2022 you were seen in the infirmary by Dr. Howard after being
> placed there for 23 hours observation for abdominal pain.  You told
> Dr. Howard that you wanted the mesh used for your hernia repair
> removed because it was recalled and was causing pain and
> constipation.  Dr. Howard explained to you no surgery was needed.
> On 09/29/22 you were seen again by Dr. Howard to discuss issues you
> felt were a result from the recalled mesh.  At this visit Dr. Howard

---

[47]   Doc. 13-6.
[48]   *Id.*
[49]   Doc. 13-7.

reviewed the abdominal CT results with you and explained that the symptoms you were reporting were likely from a gut problem not related to the mesh and a GI (gastrointestinal) consult was placed for you to rule out gastric or motility issues.  On 10/10/2022 you were seen on sick call by PA-C St. George and reported you researched bochdalek hernias and you felt you had a bochdalek hernia.  PA-C St. George discussed the results of your abdominal CT with you again and informed you it did not show a bochdalek hernia.

Based on these findings Dr. Howard, a licensed MD, did not feel your symptoms are a result of defective mesh as you claim and informed you no surgery was needed.  A GI consult has been placed to further investigate the cause of your symptoms.  There is no evidence to support your claim that prison officials are not taking action or properly treating you or have violated your 8th Amendment rights.  Therefore, this grievance is denied.  You will not be awarded a monetary amount or be scheduled for surgery.  You are encouraged to continue working with the licensed professionals here at SCI Benner to have your medical needs addressed.[50]

Plaintiff's documentation reveals that he was continually monitored and on

December 27, 2022, was notified that:

A consult for general surgery has been approved.  Awaiting outside provider availability and scheduled dates.  Per Gastroenterology, you were informed to increase fluids at least 64oz/daily, recommended diet change, start MiraLAX, which was dispensed to you on 12/14 and a colonoscopy to evaluate symptoms.  Consider General Surgery Referral if concern for mesh.  To follow up for further recommendations pending results of testing and clinical response.[51]

---

[50]   Doc. 13-9.
[51]   Doc. 13-17.

11

## III.   DISCUSSION

Section 1983 of Title 42 of the United States Code offers private citizens a

cause of action for violations of federal law by state officials.[52]  The statute

provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress....[53]

To state a claim under § 1983, a plaintiff must allege "the violation of a right

secured by the Constitution and laws of the United States and must show that the

alleged deprivation was committed by a person acting under color of state law."[54]

Thus, §1983 limits liability to persons who violate constitutional rights.

In order to establish an Eighth Amendment medical claim, a plaintiff must

show "(i) a serious medical need, and (ii) acts or omissions by prison officials that

indicate deliberate indifference to that need."[55]  A serious medical need is one that

has been diagnosed by a physician as requiring treatment, or one that is so obvious

---

[52]   *See* 42 U.S.C. § 1983

[53]   *Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

[54]   *West v. Atkins*, 487 U.S. 42, 48 (1988).
[55]   *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

that a layperson would recognize the need for a doctor's attention.[56]  In addition,

"if unnecessary and wanton infliction of pain results as a consequence of denial or

delay in the provision of adequate medical care, the medical need is of the serious

nature contemplated by the eighth amendment."[57]

A prison official acts with deliberate indifference to an inmate's serious

medical needs when he "knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference."[58]  Thus, a complaint that a physician or a medical department "has

been negligent in diagnosing or treating a medical condition does not state a valid

claim of medical mistreatment under the Eighth Amendment ..."[59]  For instance, a

"medical decision not to order an X-ray, or like measures, does not represent cruel

and unusual punishment.  At most it is medical malpractice."[60]  "[A]s long as a

physician exercises professional judgment his behavior will not violate a prisoner's

constitutional rights."[61]  Further, a doctor's disagreement with the professional

judgment of another doctor is not actionable under the Eighth Amendment.[62]  In

sum, negligence, unsuccessful medical treatment, or medical malpractice does not

---

[56]  *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).
[57]  *Id.*
[58]  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).
[59]  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).
[60]  *Id.*, 429 U.S. at 107.
[61]  *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).
[62]  *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.[63]

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician.[64] The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires.[65]

Initially, the Court finds that Corrections Health Care Administrators, like Defendant Ardery, are administrators, not doctors.[66] As such, Ardery cannot be liable simply for failing to second-guess the medical judgment of Plaintiff's health care providers or for failing to dictate an alternative course of treatment.[67] "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of

---

[63] *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).
[64] *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa.), *aff'd*, 101 F.3d 691 (3d Cir. 1996).
[65] *Farmer v. Carlson*, 685 F. Supp. at 1339.
[66] *See Thomas v. Dragovich*, 142 Fed.Appx. 33, 39 (3d Cir. 2005).
[67] *Durmer*, 991 F.2d at 69 (ruling that non-medical defendants "[could not] be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"); *Ascenzi v. Diaz*, Civil No. 05-1656, 2007 WL 1031516, at *5 (M.D. Pa. Mar. 30, 2007) (holding that prison's health care administrator lacked any medical authority to dictate the course of inmate's treatment and could not be considered deliberately indifferent for failing to second-guess the treating physician's assessment of the inmate's medical needs).

deliberate indifference."[68]

Moreover, CHCA Ardery and Nurse Snyder's only involvement in

Plaintiff's allegations is that CHCA Ardery responded to Plaintiff's Informal

Inmate Requests and Nurse Snyder denied Plaintiff's Grievance No. 988564 at the

initial review level.  Courts have routinely held that the "failure of a prison official

to provide a favorable response to an inmate grievance is not a federal

constitutional violation."[69]  Dissatisfaction with responses to an inmate's

grievances does not support a constitutional claim.[70]  Because the claims against

Defendants Ardery and Snyder are premised on their respective roles in the

grievance process, the claims against them are dismissed as frivolous as a matter of

law.

As to the remaining Defendant, Dr. Laclure, Plaintiff alleges only that while

being seen by Nurse Scoltile on May 20, 2022, she conferred with Dr. Laclure who

informed her to give [Plaintiff] the Lactulose drink first, so that [he] can regulate

[his] bowel movements" and "to then schedule [Plaintiff] for blook work, and x-

ray and to have [him] sign a medical release of information to obtain his medical

records from UPMC Altoona."[71]

---

[68]   *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).
[69]   *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992).
[70]   *See Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for § 1983 liability).
[71]   Doc. 1 at 5.

Plaintiff has failed to satisfy the deliberate indifference requirement of *Estelle*.  Cooper's complaint, memorandum of law and supporting documentation demonstrate that Plaintiff was diligently treated, not only by Dr. Laclure, but by all the other medical staff that evaluated and treated Plaintiff.  Cooper's complaint is devoid of facts establishing that any of the named Defendants were deliberately indifferent to Plaintiff's medical needs.  In fact, Plaintiff's own documentation demonstrates that Plaintiff was diligently treated and that a consult for his surgery had been approved.  While the consult for surgery may not have been as timely as Plaintiff would have liked, there is no indication, whatsoever, that any of the named Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff.[72]

In sum, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison, which simply do not rise to the level of an Eighth Amendment claim.[73]  Consequently, Defendants' motion to dismiss Plaintiff's Eight Amendment claim for failure to state a claim will be granted.

## IV.   LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment

---

[72]   *Farmer*, 511 U.S. at 837; *Rouse*, 12 F.3d at 197.
[73]   *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

would be inequitable or futile."[74]  The Court finds that granting leave to amend

would be futile based on the extensive documentation submitted by Plaintiff

demonstrating that he did not suffer an Eighth Amendment violation regarding his

medical care.  As such, further amendment would be futile.

## V.    CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion to

dismiss.[75]   The Court will also, *sua sponte* dismiss Defendant, Dr. Laclure from

the above captioned action.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[74]  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

[75]  In opposition to Defendants' motion to dismiss, Plaintiff filed a motion for preliminary injunction.  Doc. 13.  Because Cooper has failed to prevail on the merits of the instant civil right action, his motion for preliminary injunction is meritless.  *See e.g., Wilson v. Murphy*, 2020 WL 7022629, at *8 (D.N.J. 2020) ("[G]iven the complaint is being dismissed in its entirety, any request for preliminary injunctive relief is also not warranted at this time.").